UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

BOYNE USA INC.,                    )
                                   )
            Plaintiff,             )
                                   )
    v.                             )        No. 2:24-cv-00247-JAW
                                   )
STARR SURPLUS LINES                )
INSURANCE COMPANY, et al.          )
                                   )
            Defendants.            )

**ORDER ON MOTION TO DISMISS OR, IN THE ALTERNATIVE FOR A
MORE DEFINITE STATEMENT**

An owner of a ski resort brings claims against a primary insurer and an underwriter for breach of contract, violation of the state law, and misrepresentation based on a denial of an insurance claim. The underwriter moves to dismiss the claims against it for failure to state a claim or, alternatively, for a more definite statement, asserting that it was not an insurer and the complaint fails to allege its conduct with particularity. Concluding the complaint alleges specific conduct by the defendant sufficient for the court to reasonably infer it acted as a party to the contract and was involved in a denial of the plaintiff's insurance claim in contravention of the terms of the policy and the defendant's oral representations, the court dismisses the underwriter's motion.

I.    **PROCEDURAL HISTORY**

On June 4, 2024, Boyne USA, Inc.[1] (Boyne) filed a complaint against Starr

---

[1]    Boyne's corporate name as listed on the ECF docket does not contain a comma. However, the complaint filed by Boyne in state court includes a comma in both the case caption and in the body of Boyne's complaint. *See Defs.' Joint Notice of Removal* (ECF No. 1) (*Removal Notice*), Attach. 3, *Compl.*

Surplus Lines Insurance Company (Starr) and Southern Hospitality Underwriters, a subdivision of CRC Insurances Services, Inc. (SHU) (collectively, the Defendants), in the Oxford County Superior Court in the state of Maine. *Defs.' Joint Notice of Removal* (ECF No. 1) (*Removal Notice*), Attach. 3, *Compl.* In the complaint, Boyne brings three claims against the Defendants: breach of contract, a violation of the Maine Unfair Claims Settlement Practices Act (MUCSPA), and intentional or negligent misrepresentation under Maine common law. *Compl.* ¶¶ 36-50. Boyne attached to its state court complaint the insurance agreement purportedly entered into with the Defendants, a denial letter from third-party claim adjuster Crawford Global Technical Services (Crawford), and subsequent correspondence between Plaintiff's counsel and SHU related to its claim. *Compl.* at 9-76[2]. On July 11, 2024, the Defendants jointly filed a notice of removal from the Oxford County Superior Court to this Court, the United States District Court for the District of Maine, on the grounds of this Court's diversity jurisdiction. *Removal Notice* at 3.

On July 18, 2024, SHU moved for dismissal of the claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more definite statement under Rule 12(e) as to the

---

at 1. The Court assumes Boyne has pleaded its own corporate name accurately and adopts it for the purposes of this order.

[2]    The complaint retains the original exhibits from its filing in state court; however, the exhibits are not separated as standalone attachments, but are appended to the PDF of the state court complaint. *See Compl.* at 9-76. Thus, for example, Exhibit A to the state court complaint, the Policy, is cited by the Court as Complaint, pages 9 through 61. *See Compl.* at 9-61; *see also Compl.* at 62-64 (Exhibit B, the Crawford denial letter); *Compl.* at 65-66 (Exhibit C, the Statement of Values); *Compl.* at 67-72 (Exhibit D, Boyne's response to Crawford's claim denial); *Compl.* at 73-76 (Exhibit E, SHU's response to Boyne's letter).

misrepresentation claim. *Def. Southern Hospitality Underwriters' Mot. to Dismiss, or in the Alt. for a More Definite Statement* (ECF No. 20) (*SHU's Mot.*). Boyne responded in opposition on August 22, 2024. *Pl.'s Opp'n to Def. Southern Hospitality Underwriters' Mot. to Dismiss, or in the Alt. for a More Definite Statement* (ECF No. 27) (*Pl.'s Opp'n*). SHU replied on September 12, 2024. *Def. Southern Hospitality Underwriters' Reply in Support of Mot. to Dismiss, or in the Alt. for a More Definite Statement* (ECF No. 29) (*SHU's Reply*).

## II.    FACTUAL BACKGROUND[3]

Boyne, a Michigan corporation with its principal place of business in Petoskey, Michigan, owns a variety of ski and golf resorts in the United States; its subsidiary Sunday River Skiway Corporation, a Maine corporation, owns and operates the Sunday River ski resort (Sunday River) in Newry, Maine. *Compl.* ¶¶ 1-2. Starr is a surplus lines insurance and investment company headquartered in New York, New York. *Id.* ¶ 3. SHU is a specialty and wholesale insurance brokerage and underwriting firm also headquartered in New York, New York. *Id.* ¶ 4.

Through its subsidiaries, Boyne owns and operates more than a dozen ski and golf resorts across the United States, including Sunday River, with an aggregate value in excess of one billion dollars. *Id.* ¶ 7. Because of the significant insurance limits necessary to fully insure these property interests, Boyne typically participates

---

[3]    Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts. "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

in a "layered property insurance program," pursuant to which multiple insurers insured different layers of risk, including flood risk. *Id.* ¶ 8.

Boyne solicited proposals for one such layered insurance program for its resorts for the period beginning April 1, 2023 and received in response from SHU a proposal including a $5 million sublimit for flood coverage and identifying Starr as the principal insurer for the first layer of coverage. *Id.* ¶¶ 9-11.  Based on its concerns that $5 million was insufficient flood coverage for its resorts, Boyne requested SHU increase the proposed flood sublimit to $25 million; SHU agreed to do so. *Id.* ¶ 12. Boyne subsequently sought quotes from other insurance carriers for a separate $50 million excess policy, bringing its total flood coverage to $75 million. *Id.*

As the SHU proposal referenced a flood exclusion for "'Locations' that were partially or fully within a flood zone," Boyne requested its agent, Ryan Patrick of Safehold Special Risk (Safehold), confirm with SHU that its proposed policies provided flood insurance coverage to all Boyne's resorts, even though portions of some resorts were located in a flood plain. *Id.* ¶ 13. Mr. Patrick later informed Boyne that he had spoken with Brad Brown, the Program President of SHU, and that Mr. Brown had confirmed all resorts would have flood coverage. *Id.* ¶ 14. "Based on this and other information, Boyne selected and bound the program offered by [SHU]." *Id.* ¶ 15.  SHU provided Boyne with an insurance policy insuring its interests bearing Policy Number SLSTPTY11780323 (the Policy), effective from April 1, 2023 until April 1, 2024, and identifying Starr as the lead insurer. *Id.* ¶ 16.

On December 18, 2023, a rainstorm at Sunday River resulted in "widespread and significant" property damage, including "the main access road to Sunday River [being] entirely washed out," "[b]uildings [being] flooded," and "[c]ulverts [being] damaged." *Id.* ¶¶ 17-18. Boyne estimates the total cost of repairs to be approximately $10 million. *Id.* ¶ 18. Following the storm, Sunday River began temporary repairs to resume operations and submitted a notice of claim to SHU on December 19, 2023.[4] *Id.* ¶¶ 19-21.

Boyne alleges that the Defendants retained Crawford as an independent adjusting company, which sent adjustors and building consultants to Sunday River on December 21, 2023, January 2, 2024, and January 9, 2024 to assess the damage. *Id.* ¶ 22. Meanwhile, Sunday River undertook temporary repairs at substantial cost for six weeks; during that time, the Defendants did not seek information about coverage under the Policy, indicate an issue with coverage, or send a reservation of rights letter. *Id.* However, on February 6, 2024, Crawford issued a denial of coverage letter, *id.* ¶ 23, basing its denial on the Policy's exclusion of "Locations wholly or partially within Special Flood Hazard Areas" and stating, "the referenced loss location is partially located in a high hazard flood zone." *Id.* ¶ 24.

Boyne responded to the denial letter on April 5, 2024. *Id.* ¶ 31. In its response, Boyne averred that "[c]ontrary to the Insurer's apparent position, the flood exclusion

---

[4]    The complaint alleges that "[i]mmediately recognizing the significance of the damage, Boyne submitted a notice of claim under the Policy to [SHU] on December 19, 2024." *Compl.* ¶ 21. Based on the agreed-upon date of the storm of December 18, 2023, the fact that Crawford responded by sending adjustors and building consultants by December 21, 2023, *id.* ¶ 22, and the fact that the complaint was filed in state court on June 6, 2024, *id.* at 1, the Court presumes the Plaintiff's date of "December 19, 2024" is a typographical error and that it intended to write "December 19, 2023."

must be analyzed separately for each Location at Sunday River as identified on the Statement of Values." *Id.* at 5 (capitalization altered). Boyne's letter pointed to the Policy, which defines Location as "the location as specified in the Statement of Values." *Id.* ¶ 26. The Statement of Values, in turn, is a document submitted to SHU prior to the binding of coverage and is periodically updated. *Id.* ¶ 27. Boyne underlined that the Sunday River Statement of Values identifies numerous Locations at the Sunday River property; for example, Location 2 encompasses the Peak Lodge, while Location 3 includes both the Merrill Brook Commercial Units and the River House. *Id.* ¶ 28. In its response to Crawford's denial of coverage, Boyne submitted that a proper application of the flood exclusion required an analysis of each Location as specified in the Statement of Values to determine whether it is in a flood zone and that such analysis was not conducted in the denial letter, as it would have determined that Boyne does not seek coverage for any Location to which the flood zone exclusion would apply. *Id.* ¶¶ 29-30.

SHU responded to Boyne's letter via email, reiterating the basis for denial and referring to a document titled "Boyne Named Insured Entities" in support of its conclusion that each resort constitutes its own Location within the meaning of the Policy. *Id.* ¶¶ 32-34.

## III.    THE PARTIES' POSITIONS

### A.    The Allegations in the Complaint

Boyne's complaint consists of three counts: (1) Count One alleges that Starr and SHU breached their contract by improperly interpreting the Policy's definition of Location and thus denying Boyne's valid claim; (2) Count Two alleges that Starr and

SHU violated the MUCSPA, 24-A M.R.S. § 2436-A, by failing to promptly and timely adjust Boyne's claim and by failing to pay the claim when liability was reasonably clear; and (3) Count Three alleges that Starr and SHU made intentionally or negligently false representations to Boyne for the purpose of inducing Boyne to purchase the Policy. *Id.* ¶¶ 36-50.

Boyne seeks injunctive relief to enforce coverage of its claim under the Policy, as well as damages and attorney's fees and other costs as the Court deems appropriate. *Compl.*, Prayers for Relief (a) – (d).

### B. SHU's Motion to Dismiss, or in the Alternative for a More Definite Statement

SHU moves for dismissal of the breach of contract, MUCSPA, and misrepresentation claims against it or, in the alternative, for a more definite statement as to Boyne's misrepresentation claim. *SHU's Mot.* at 1.

Moving to dismiss the counts against it pursuant to Federal Rule of Civil Procedure 12(b)(6), SHU contends that it "is not an insurer and has no contractual relationship with Boyne" and thus dismissal is appropriate because the Plaintiff has failed to state a claim upon which relief can be granted. *Id.* at 2, 5. SHU posits that its only role in the Policy was to "serve[] as a specialty and wholesale insurance brokerage and underwriting firm and as one of the entities to be contacted in the event of a claim," and submits "that there is no contractual privity between Boyne and SHU and SHU did not make any representations, much less any misrepresentations, to Boyne." *Id.* at 2. The Defendant also points out that Boyne does not allege it communicated with SHU regarding the policy prior to binding, but

instead spoke only with its retail agent, Mr. Patrick, who is not a named party in this complaint. *Id.*

Regarding Boyne's misrepresentation claim, SHU adds that Boyne has failed to allege fraud with particularity by distinguishing each Defendant's alleged conduct, and thus moves in the alternative for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). *Id.* at 3.

### 1.    Count I – Breach of Contract

First addressing Boyne's breach of contract claim, SHU urges the Court to dismiss the count against it because SHU did not agree to insure Boyne in the Policy. *Id.* at 6. Rather, it asserts the terms of the Policy "make clear that Starr (and not SHU) is the 'Insurer' who agreed to 'indemnify [Boyne] for the amount recoverable in accordance with the terms and conditions of the Policy.'" *Id.* at 7 (citing *Compl.* at 15-16). The complaint contains no allegations that SHU is a party to the Policy or that Boyne has a separate contract with SHU, the Defendant says, arguing that where "the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Id.* (quoting *Budrow v. Caliber Home Loans, Inc.*, No. 22-10052-RGS, 2022 U.S. Dist. LEXIS 105737, at *6 n.3 (D. Mass. June 14, 2022) (citation amended) (in turn citing *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007))). Further, SHU says, the complaint neither distinguishes between SHU and Starr nor identifies parties to the Policy, resulting in obfuscation of alleged facts against either Defendant. *Id.* at 8. At bottom, SHU asks the Court to dismiss the breach of contract claim brought against it based on Boyne's failure to allege an insurance contract between Boyne and SHU. *Id.*

### 2. Count II – Maine Unfair Claims Settlement Practices Act

SHU extends this argument to the MUCSPA claim, submitting that 24-A M.R.S. § 2436-A only permits actions against insurers. *Id.* (citing 24-A M.R.S. § 2436-A (providing a private right of action for a "person injured by any of the following actions taken by that person's own *insurer*") (emphasis added by Defendant)). Collecting caselaw from state and federal courts in Maine that have used the operative noun "insurer" in application of the MUCSPA, SHU again submits that it did not act as an insurer of Boyne. *Id.* at 8-9. Maine law, SHU says, defines "insurer" as including only "any life, health, casualty or property insurance company, fraternal benefit society, nonprofit health service corporation, nonprofit hospital service corporation, nonprofit medical service corporation, prepaid health plan, dental care plan, vision care plan, pharmaceutical plan, health maintenance organization and all similar type organizations." *Id.* at 9 (quoting 24-A M.R.S. § 2439). SHU argues a "specialty and wholesale insurance brokerage underwriting firm" does not fall within any of these categories, and further, that it was not a party to the Policy and thus had no responsibility for making any payments. *Id.*

### 3. Count III – Misrepresentation

SHU moves to dismiss Count III or, in the alternative, for a more definite statement. SHU characterizes Count III as "a fraudulent misrepresentation claim, with negligent misrepresentation pled in the alternative." *Id.* at 10. Because misrepresentation is "considered a species of fraud," SHU argues the heightened pleading standard of Federal Rule of Civil Procedure 9(b) should apply. *Id.* at 10 (citing *McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207, 218 (1st Cir. 2012)). The

Court should further apply Rule 9(b) to the alternative negligent misrepresentation claim, SHU says, as an "'associated claim[] . . . where the core allegations effectively charge fraud' and of which 'fraudulent misrepresentation is the lynchpin.'" *Id.* at 10-11 (quoting *N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 14-15 (1st Cir. 2009)).

SHU reports that the First Circuit has consistently demanded "strict compliance" with Rule 9(b), which requires a plaintiff to allege with specificity the "who, what, where, and when of the allegedly false or fraudulent representation." *Id.* at 11 (first quoting *OfficeMax Inc. v. Cnty. Qwik Print, Inc.*, 802 F. Supp. 2d 271, 279 (D. Me. 2011)); then quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29-30 (1st Cir. 2004). Describing Boyne's complaint as "sparse," "generalized," and "conclusory," SHU argues the complaint contains no allegations that SHU spoke with Boyne during the insurance procurement process. *Id.* Boyne's allegations that it asked its retail agent, Mr. Patrick, to do so, and that Mr. Patrick reported being told "all resorts would have flood coverage," only support a claim against Safehold, which SHU points out is not a named party to this case. *Id.* at 11-12. Rather, SHU says, the complaint conflates SHU and Starr as "Defendants" and asserts misrepresentations without specifying the role of the respective Defendants. *Id.* at 12. SHU concludes the fraudulent misrepresentation claim should be dismissed pursuant to Rule 9(b) for Boyne's "fail[ure] to put each Defendant on notice of the precise misconduct with which he is charged." *Id.* at 12 (quoting *Bailey v. Linsco/Private Ledger Corp.*, 136 F.R.D. 11, 14 (D. Me. 1991)).

SHU continues that Boyne's complaint "failed to sufficiently allege *when* or *where* any misrepresentations took place" other than the generalized "[a]t the time Boyne purchased the policy." *Id.* at 13 (quoting *Compl.* at ¶ 45) (emphasis and alterations added by Defendant). SHU directs the Court to precedent within the First Circuit requiring more than "a general statement of the general time frame during which alleged fraudulent representations were made." *Id.* (quoting *OfficeMax*, 802 F. Supp. 2d at 280 (in turn citing *Bailey*, 136 F.R.D. at 15 n.10)). SHU avers Boyne failed to specifically allege "when the representations occurred," "describe the manner in which the representation was made," or "identify the individual(s) at Boyne to whom the representation was made." *Id.* at 14.

SHU moves the Court to dismiss the misrepresentation claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6), or, "[a]t a minimum," for a more definite statement pursuant to Rule 12(e) "clarifying the who, what, where, when, and why of any alleged representations that SHU – and not any other party or non-party – made to Boyne." *Id.* at 14-15.

### C.    Boyne's Opposition

Boyne opposes the Defendant's motion, arguing that SHU had a "central role" in Boyne's procurement of the Policy and subsequent denial of its claim. *Pl.'s Opp'n* at 1.

### 1.    Count I – Breach of Contract

Boyne first submits that it has adequately pleaded that SHU owes Boyne contractual duties under Maine law by alleging "Boyne sought proposals, that SHU submitted a proposal, that SHU and Boyne negotiated certain aspects of the

arrangement, that 'Boyne selected and bound the program offered by [SHU],' and that SHU delivered documentation of the agreement." *Id.* at 7 (quoting *Compl.* ¶¶ 9-16). Furthermore, Boyne argues, "SHU acted like a party to the contract" as manager of the JKL Group, LLC (JKL) property program by underwriting and approving the Policy, making the initial proposal and negotiating revisions, delivering the final version of the Policy, and acting as Boyne's exclusive contact. *Id.*  SHU also adjudicated Boyne's claim by interpreting "Location," the Plaintiff contends, which Crawford made clear could only be done by "the Insurers." *Id.* (citing *Compl.* at 62-64, 67-72) (citation amended)[5].  Boyne points out that in its correspondence with SHU regarding the denial of its claim, SHU "never disclaimed responsibility under the Policy and never identified any other person as responsible for performing its obligations." *Id.* at 8 (citing *Compl.* at 62-64, 67-72) (citation amended).

Boyne argues that SHU's performance of all the material functions attributed to the insurer is sufficient to establish it is a party to the contract at the pleading stage under Maine caselaw on course of performance. *Id.* (citing, e.g., *Blue Rock Indus. v. Raymond Int'l, Inc.,* 325 A.2d 66, 73 (Me. 1974)).  Moreover, Boyne says, the language of the Policy itself does not foreclose SHU's involvement, as it identifies JKL as the Insured. *Id.* (citing *Compl.* at 9).  Boyne admits that the Policy also says it was "Issued to" Boyne and the "Named Insured" schedule identifies Boyne and its resorts,

---

[5]    The Plaintiff cites exhibits to the complaint generally without providing page numbers, which has unnecessarily increased the burden on the Court. *See, e.g., Pl.'s Opp'n* at 8. For example, the entire insurance policy is fifty-two pages. *See Compl.* at 9-61. While the complaint does retain notations to respective exhibits to the original state court complaint, the Court cites page numbers of the complaint filed in this court for a greater level of accuracy and consistency throughout this order, as previously explained in Footnote 2.

submitting that the language of the Policy thus leaves "the precise arrangement . . . unclear." *Id.* This lack of clarity, Boyne argues, makes it "impossible to read the Policy as definitively precluding the existence of a contractual relationship between SHU and Boyne." *Id.* at 9.

Boyne also rejects SHU's argument that the complaint used "Defendants" in a reductive fashion and thus made it "virtually impossible" for SHU to know what facts are intended to support a claim against each respective Defendant, contending that it clearly delineated the conduct of each Defendant in the Facts section of the complaint and expressly incorporated those factual allegations in asserting each cause of action. *Id.* at 9-10 (citing *Compl.* ¶¶ 7-35). As such, its complaint did not "treat[] disparate parties identically without explanation . . . depriv[ing] each individual party of a meaningful opportunity to defend itself." *Id.* at 10 (quoting *Maura v. Scotiabank P.R.*, No. 17-2263 (DRD), 2019 U.S. Dist. LEXIS 175278, at *67-68 (D.P.R. Sep. 30, 2019)). Further, Boyne submits, SHU forced this pleading convention by failing or declining to provide Boyne with the information necessary to discern the precise relationships among relevant entities. *Id.* at 10. Boyne concludes that the complaint complies with the "short and plain statement . . . [with] enough detail to make the asserted claim plausible on its face" standard of Federal Rule of Civil Procedure 8 and urges the Court to allow the claim to proceed to discovery so that it can clarify the relationships and conduct of each party. *Id.* at 10-11.

## 2. Count II – Maine Unfair Claims Settlement Practices Act

Boyne argues that, contrary to SHU's assertions, SHU qualifies as an "insurer" for the purposes of Count II under both the relevant statutory language and Maine

caselaw. *Id.* at 11. Boyne notes that SHU's motion to dismiss cites the definition of "insurer" from 24-A M.R.S. § 2439, which by its own terms applies to the term only "as used in sections 2438 to 2445," Maine's Insurance Policy Language Simplification Act. *Id.* at 12 (citing 24-A M.R.S. § 2439). Boyne avers that it brings its claim under 24-A M.R.S. § 2436-A, which instead uses the definition of "insurer" provided in 24-A M.R.S. § 4: "[i]nsurer includes *every person* engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance." *Id.* at 11 (emphasis added by Plaintiff). Maine courts have interpreted this definition broadly, Boyne says, including extending its scope to cover intermediaries. *Id.* (citing *Tom Brown & Co., Inc. v. Francis*, 608 A.2d 148, 152 n.5 (D.C. 1992) (holding, in an action to enforce judgment entered in Maine court, there is "little room for doubt" an "intermediary" insurance agency "is an 'insurer' as defined by Maine statutes").

Boyne submits the complaint's allegations that SHU played a central role in issuance of the Policy and adjudication of its claim are sufficient to preclude dismissal of its statutory claim. *Id.*

### 3. Count III – Misrepresentation

Boyne characterizes SHU's motion to dismiss as making two arguments in response to its misrepresentation claim: first, that SHU cannot be liable for a misrepresentation made to Boyne's agent only, and second, that the misrepresentation claim is not sufficiently pleaded. *Id.* at 12. Boyne rejects both contentions. *Id.*

Calling SHU's argument that Boyne should bring its misrepresentation claim against Safehold "bizarre," Boyne submits the complaint clearly alleges Safehold

contacted and spoke with SHU on Boyne's behalf and argues that false statements made by a third party to an agent of a disclosed principal are actionable by that principal against the third party. *Id.* at 12-13 (citing Restatement (Second) of Agency § 315 (1958)).

Next, Boyne resists SHU's characterization of its claim and argues Count III alleges only negligent misrepresentation and, as such, should not be subjected to the heightened standard of Rule 9(b). *Id.* at 13. After asserting SHU does not dispute the claim meets the typical pleading standard of Federal Rule of Civil Procedure 8, Boyne submits the cases cited by SHU to support its position that Rule 9(b) should apply to the negligent misrepresentation claim are inapposite to the present case as neither case addresses negligent misrepresentation. *Id.* at 13-14. Further, Boyne directs the Court to caselaw in which this District concluded that Rule 9(b) does not apply to negligent misrepresentation claims so long as the plaintiff's "allegations adumbrate a set of circumstances plausibly free of fraud" and "[n]egligence . . . provide[s] an adequate explanation." *Id.* at 14 (quoting, e.g., *Enercon v. Glob. Comput. Supplies, Inc.*, 675 F. Supp. 2d 188, 198 (D. Me. 2009)).

Alternatively, even if Rule 9(b) does apply to the misrepresentation claim, Boyne argues, the complaint contains adequately particular allegations against each respective Defendant in the Facts section which are expressly incorporated into each count. *Id.* With regard to SHU, Boyne says, these allegations include that, before its coverage was bound, its agent Mr. Patrick contacted SHU to confirm its policies "provided flood insurance coverage to all of Boyne's resorts even though small parts

of some of the resorts were in a flood plain," that Mr. Patrick spoke with SHU Program President Mr. Brown who "confirmed that all resorts would have flood coverage," and that Boyne agreed to the Policy in reliance on Mr. Brown's statement. *Id.* at 14-15 (citing *Compl.* ¶¶ 13-16). Boyne contends these allegations satisfy the Rule 9(b) standard, despite not identifying the specific date on which Mr. Patrick and Mr. Brown spoke. *Id.* at 15.

Finally, Boyne asks the Court, should it grant SHU's motion to dismiss, to do so with leave for Boyne to amend its complaint following discovery into these issues. *Id.* at 16.

### D.    SHU's Reply

In its reply, SHU proffers that federal court actions are not fishing expeditions and Boyne has failed to state a valid claim for any of its three counts. *SHU's Reply* at 1-2.

### 1.    Count I – Breach of Contract

SHU reiterates its position that the Policy identifies only Starr as the Insurer and points out Boyne's opposition concedes this point. *SHU's Reply* at 2 (citing *Pl.'s Opp'n* at 2). Arguing "the law is clear that '[a]n insurance policy is a contract between the insured and the insurer,'" SHU submits that, because it is not an insurer, SHU cannot have breached a material term of the contract. *Id.* (quoting *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 17, 226 A.3d 227). SHU also rejects Boyne's cited cases as irrelevant because they did not involve insurance disputes or disputes regarding the existence of an agreement between the parties. *Id.* at 3.

16

SHU submits that the *Maura v. Scotiabank Puerto Rico* case cited by Boyne cuts in its own favor, as the *Maura* Court dismissed the breach of contract claim for treating disparate parties identically. *Id.* at 3-4 (citing *Maura*, 2019 U.S. Dist. LEXIS 175278, at *67-68) (citation amended).  Further, SHU says, Boyne's position that it "cannot be expected to know the exact corporate structure and degree of each Defendant's involvement" at this stage is off base, as SHU and Starr are not related or affiliated entities and Boyne has not pleaded the complaint as such. *Id.* at 4.

### 2.    Count II – Maine Unfair Claims Settlement Practices Act

SHU reiterates its position that Boyne cannot bring a statutory claim against it pursuant to the MUCSPA because such claims are permitted only against "insurers" and Starr is the only "insurer" identified on the Policy. *Id.* (citing *Compl.* at 15-16).  It submits the case cited by Boyne, *Tom Brown & Co. v. Francis*, involved a bonding agency which provided surety bonds and thus the agency fell within the definition of "insurer" provided by 24-A M.R.S. § 4. *Id.* at 5 (citing *Tom Brown & Co. v. Francis*, 608 A.2d at 152 n.5; 24-A M.R.S. § 4 ("'Insurer' includes every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance").  SHU, it argues, is not an "indemnitor, surety, or contractor," nor does it "enter[] into contracts of insurance." *Id.*

### 3.    Count III – Misrepresentation

SHU contends Boyne originally pleaded Count III as both intentional and negligent misrepresentation, *id.* (citing *Compl.* ¶ 48), but has since abandoned its intentional misrepresentation claim which would have been subject to the higher pleading standard of Rule 9(b). *Id.* (citing *Pl.'s Opp'n* at 13).  Even under the more

lenient pleading requirements of Rule 8, SHU says, the count should be dismissed for failure to state a claim based on Boyne's failure to allege justifiable reliance on the alleged misrepresentation. *Id.* at 5-6. SHU argues the terms of the Policy plainly contemplate "Flood for Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by [FEMA] is excluded." *Id.* at 6 (citing *Compl.* at 9). Collecting First Circuit caselaw in support, SHU argues Boyne cannot avoid responsibility for its failure to read the Policy terms on flood coverage based on an alleged misrepresentation made to Safehold. *Id.* at 6-7.

In a footnote, SHU also alleges Boyne has failed to adequately plead its agency relationship with Mr. Patrick or Safehold, citing caselaw in which the District of Massachusetts dismissed claims on the pleadings based on conclusory assertions of an agency relationship without alleging the principal controlled the agent's activities. *Id.* at 6 n.3 (citing *Berezin v. FCA US, LLC*, No. 21-10852-FDS, 2022 U.S. Dist. LEXIS 28912, at *12 (D. Mass. Feb. 17, 2022); *Norris v. Glob. Tel Link Corp.*, No. 16-11323-LTS, 2016 U.S. Dist. LEXIS 118192, at *7 (D. Mass. Sept. 1, 2016)).

In conclusion, SHU asks the Court to dismiss Boyne's misrepresentation claim or, alternatively, to grant its motion for a more definite statement to clarify its grounds for this claim, including the insufficiently pleaded agency relationship. *Id.* at 7.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To

state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski*, 854 F.3d at 71-72 (internal citation omitted) (quoting *Schatz*, 669 F.3d at 55; *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

Reviewing for failure to state a claim is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán*, 734 F.3d at 103 (quoting *Morales-Cruz*, 676 F.3d at 224); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct

alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "On a motion to dismiss, the averments of the complaint must be taken in the light most favorable to the plaintiff." *Butler v. Balolia*, 736 F.3d 609, 617 (1st Cir. 2013) (citing *SEC v. Tambone*, 597 F.3d 436, 441-42 (1st Cir. 2010)).

## V.    DISCUSSION

The Court begins with a preliminary note on the scope of the record. "Ordinarily, a court ruling on a motion to dismiss may only consider whether the factual allegations within the four corners of the plaintiff's complaint state a plausible claim for relief." *James D. Julia, Inc. v. Dan Murphy Auctions, LLC*, No. 1:21-cv-00025-JAW, 2021 U.S. Dist. LEXIS 115124, at *21 (D. Me. June 21, 2021) (citing *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020)). However, "[i]n adjudicating a Rule 12(b)(6) motion, a district court may consider not only the complaint but also any documents annexed to it (the authenticity of which are unchallenged) and other such documents that are sufficiently referenced and/or relied upon in the complaint." *Rivera v. Kress Stores of P.R., Inc.*, 30 F.4th 98, 102 (1st Cir. 2022); *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 12 (1st Cir. 2004) ("In ruling on whether a plaintiff has stated an actionable claim, an inquiring court, be it a trial or appellate court, must consider the complaint, documents annexed to it, and other materials fairly incorporated within it").

Moreover, "when, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court

can review it in deciding a motion to dismiss under Rule 12(b)(6)." *James D. Julia*, 2021 U.S. Dist. LEXIS 115124, at *21-22 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)).  As the breach of contract claim turns on the terms of the contract between the parties, the Court considers the Policy and other documents attached by Boyne to its original complaint, which it admits as authentic, and SHU does not challenge.

With that preface, the Court turns to the merits of the motion.

### A.    Count I – Breach of Contract

In this case, SHU disclaims liability for breach of contract on the grounds that it is not a named insurer under the terms of the Policy, such that no contract exists between SHU and Boyne that it could have breached, and further that Boyne has failed to specify which conduct amounts to a breach. *SHU's Mot.* at 6-8.  Boyne retorts that the complaint plainly alleges the basic elements of a contract between SHU and Boyne and that SHU's course of performance further demonstrates the existence of a contract implied in fact, if not in law.  *Pl.'s Opp'n* at 6-11.  SHU rejoins that the complaint fails to plead its claim with particularity and reiterates that it is not an insurer under the plain language of the Policy.  *SHU's Reply* at 2-4.  The Court will consider SHU's arguments on failure to allege each Defendant's conduct with specificity and on failure to state a breach of contract claim in turn.

### 1.    Distinguishing Between Defendants

First, considering SHU's argument that the complaint "does not in any way distinguish between each Defendant's alleged breach or other conduct," *SHU's Mot.* at 7-8, the Court agrees with Boyne that it sufficiently "delineated which party did

what in the factual background of the Complaint." *Pl.'s Opp'n* at 9. Indeed, despite SHU's insistence that "it is virtually impossible" to discern "which allegations of fact are intended to support a claim for breach of contract against either SHU or Starr," the Court's review of the complaint identifies only two mentions of Starr in the entire Facts section, and those identify Starr as the principal insurer under the initially proposed and final versions of the Policy. *Compl.* ¶¶ 11, 16. Boyne's interactions with SHU, however, are specifically described in at least twelve paragraphs of the Facts section. *Compl.* ¶¶ 10-16, 21, 32-35. As Boyne points out, each count of the complaint explicitly incorporates the entire Facts section. *Compl.* ¶¶ 36, 40, 43.

That said, Boyne's response that "[i]t is only in the cause of action itself, after incorporating by reference all of those factual allegations, that Boyne used the term Defendants" misstates the contents of the complaint. Within the Facts section, the complaint alleges:

> Defendants began adjusting the claim as if it were covered by the Policy. Defendants retained an independent adjusting company, Crawford & Company[], which sent adjustors and building consultants to Sunday River to scope the damage on December 21, 2023, January 2, 2024, and January 9, 2024. For six weeks after submission of the claim while Sunday River expended substantial money on temporary repairs, Defendants sought no information about coverage under the Policy, indicated no issue with coverage, and sent no reservation of rights letter.

*Compl.* ¶ 22. However, the Court concludes this one reductive allegation does not singlehandedly warrant dismissal of the breach of contract count. As discussed by the parties, in *Maura v. Scotiabank Puerto Rico*, the District of Puerto Rico Court dismissed the breach of contract claim because "Plaintiffs failed to include any factual allegations that may relate to Scotiabank with any of the claims set for in the

Complaint," and "Scotiabank is only mentioned in passing in order to try to establish standing to bring suit against Defendants." *Maura*, 2019 U.S. Dist. LEXIS 175278, at *68. As explained, the same cannot be said here, where Boyne alleges specific conduct by SHU throughout its complaint. The Court concludes that the complaint presents sufficiently particularized allegations for it to determine whether Boyne has adequately stated a claim for breach of contract.

The Court's decision comports with the directive of the First Circuit, which has indicated its preference for declining to dismiss claims based on technicalities rather than on the merits. *See Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-182 (1962)). For these reasons, the Court proceeds to consider whether Boyne's complaint sufficiently alleges a breach of contract claim.

### 2.    Pleading the Elements of Breach of Contract

"To prevail on a breach of contract claim, a plaintiff must demonstrate the existence of a contract with the defendant, the defendant's breach of a material term, and that the breach caused the plaintiff damages.'" *Stewart v. Univ. of Me. Sys.*, 2023 Me. Super. LEXIS 15, at *16 (Sept. 8, 2023) (citing *Tobin v. Barter*, 2014 ME 51, ¶10, 89 A.3d 1088). "To demonstrate that the parties had a legally binding contract, the plaintiff must establish that there was a meeting of the minds between the parties— or 'mutual[] assent to be bound by all [the] material terms' of the contract." *Tobin*,

2014 ME 51, ¶ 9, 89 A.3d 1088 (citing *Sullivan v. Porter*, 2004 ME 134, ¶ 13, 861 A.2d 625; Restatement (Second) of Contracts § 17 & cmt. c (1981)).

SHU argues that it was not a party to the Policy, such that no contract existed between it and Boyne that SHU could have breached. *SHU's Mot.* at 6; *SHU's Reply* at 2. Boyne takes the position that the complaint properly alleges the existence of a contract and, further, that SHU's course of performance reveals it acted as a party to the contract. *Pl.'s Opp'n* at 7-8.

The Court thus begins with the Policy's text. As SHU points out, the Policy states: "Insurer: Starr Surplus Lines Insurance Company," and does not mention SHU. *SHU's Reply* at 2 (citing *Compl.* at 15). The Insurer—here, Starr—expressly agrees "to indemnify the Insured for the amount recoverable in accordance with the terms and conditions of the Policy." *Id.* (citing *Compl.* at 16). Confusingly, however, the Policy does not list Boyne as the Insured; rather, the Policy provides:

**The Name of the Insured:**

> **JKL Group, LLC** and/or any subsidiary, affiliated, controlled, or associated companies, trust, association, fund, person or beneficiary, holding company or partnership (including subsidiaries thereof) whether active or not, past or that exists at the inception of the policy or is formed and acquired hereafter; the interest of any the Named Insured in a partnership or joint venture with an interest in a covered Location/property; and any client entity (regardless of ownership or entity form whose assets or portions of assets are controlled or managed by the Named Insured and/or for whom the Named Insured is required by written or oral contract to provide insurance.
>
> Any and all Affiliates, at all tiers or levels and any Trusts or Trustees, Board of Directors, and employees of client serving in their role as Directors, Officers, and Partners of the Named Insured.

All hereafter referred to as the "**Insured**"

*Compl.* at 15 (emphasis in original). Exacerbating this confusion, an Endorsement attached to the Policy, effective as of November 1, 2023, repeats on five consecutive pages "Named Insured: JKL Group, LLC" and "Issued to: Boyne USA, Inc." *Compl.* at 9-13.

While JKL Group, LLC is not a named party to this action, in SHU's email responding to Boyne, SHU Senior Vice President John Landry responds as "the underwriter who manages the JKL Group, LLC property program and approved the quoting and binding of Boyne USA into the program effective 11/1/23 – 4/1/24." *Compl.* at 73. As noted above, the plain language of the Policy includes as Insured any affiliated companies of JKL Group, LLC. The Policy itself also provides, on a page titled "JKL Group LLC," that the point of contact for submitting a claim is: "Brad Brown, Program President, Southern Hospitality Underwriters, A Division of CRC Group," along with Mr. Brown's contact information. *Compl.* at 14. Taking as true that SHU is the manager of JKL Group, LLC, the Court may reasonably infer that SHU falls within the ambit of an affiliate of the Insured, as contemplated by the Policy.

The Court agrees with Boyne that the "precise arrangement" between a named Insured and the party to which the Policy is issued is "unclear." *Pl.'s Opp'n* at 8. When a contract's plain language leaves ambiguity, Maine courts have encouraged consideration of the parties' course of performance. *Blue Rock Indus.*, 325 A.2d 66, 73 (Me. 1974) (citations omitted). On this point, though SHU insists it did not act as an Insurer and played no role in the denial of Boyne's claim, the documentary

25

evidence Boyne attached to its complaint plausibly alleges facts demonstrating SHU's recognition it was bound by the Policy. SHU argues that the Policy contemplates an independent, third-party claims adjuster—here, Crawford— in charge of adjudicating claims and that Crawford made the decision to deny Boyne's claim. *SHU's Reply* at 3 n.1 (citing *Compl.* at 40). Indeed, Boyne's complaint states that "Crawford issued a denial of coverage letter." *Compl.* ¶ 23. Notably, however, when Boyne disputed the denial in its April 5, 2024 email sent to SHU, Boyne asked SHU to "forward this letter to the Insurers so that [Boyne] may also communicate directly with them." *Compl.* at 67. Instead, SHU responded directly with an explanation of why Crawford correctly denied the claim, including a detailed analysis of the language and exclusions of the Policy, and concluded "it was not the intent of the coverage we bound to include high hazard flood coverage at the Boyne Sunday River location or any other location that is wholly or partially within a high hazard flood zone." *Id.* at 73-75.

SHU's responsive email is relevant to the Court's determination of the existence of a contract between Boyne and SHU for several reasons. First, nowhere in the email does SHU generally disclaim any coverage; rather it focuses on the substantive details of why Boyne's specific claim falls within the Policy's exclusions. Second, in its discussion of intent, SHU expressly acknowledges that it bound the Policy for the Sunday River location. *Id.* at 73, 75. Third and finally, Boyne asks SHU to forward its email to the Insurers to facilitate direct communication, *id.* at 67; SHU's direct response explaining the basis for denial provides further circumstantial evidence that SHU considered itself an Insurer and acted as if it was bound by the

terms of the Policy. *Id.* at 73-76. These facts together, taken in the light most favorable to Boyne, allow the Court to reasonably infer at this stage of the proceeding that SHU was a party to the Policy such that a contract existed between Boyne and SHU. Thus, the Court will proceed to considering whether Boyne has adequately alleged SHU breached the contract's material terms.

Here, the breach of contract claim boils down to a dispute over the Policy's definition of the term "Location." The parties do not contest that Boyne purchased a policy with a flood coverage sublimit of $25,000,000 and an express exclusion for "Locations wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA)." *Compl.* at 9; *see also SHU's Reply* at 6. However, Boyne submits flood coverage must be determined for each Location at a granular level, while SHU contends each resort, such as Sunday River as a whole, is itself a Location within the meaning of the Policy. The Court looks to the language of the Policy to determine whether the claim's denial comports with the contractual terms:

> **Location** means the locations as specified in the Statement of Values, but if not so specified, locations means any building, dock, yard, wharf. pier, or bulkhead or any group of the foregoing bounded on all sides by public streets, clear **Land** space or open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

*Compl.* at 46 (emphasis in original). Boyne attached the purported Statement of Values to its complaint, the authenticity of which SHU did not contest. *See Compl.* at 65-66. As relevant here, the Statement of Values spreadsheet for Sunday River designates ten Locations in the first column, each followed by an enumeration of

buildings in respective rows, a narrative description, and data points on, inter alia, square footage and value. *Id.*

Based on its review of the Statement of Values, which the Court takes as true at this stage of the proceeding, the Court concludes Locations are indeed more granular than an entire resort, such that adjudication of flood coverage must contemplate whether each enumerated Location falls within the SFHA areas identified by FEMA. As SHU itself explained in its email supporting Crawford's denial of Boyne's claim, "[SHU] consider[s] each ski resort a separate location" and "[b]ecause this high hazard flood zone is within the Boyne Sunday River location, there is no coverage for flood at this location." *Compl.* at 73-74. Based on this analysis, Boyne has made a sufficient claim that SHU predicated its denial of flood coverage to Sunday River as a whole on a mistaken interpretation of the terms of the Policy, and in so doing, breached the contract by denying coverage without performing a granular analysis of each Location as defined by the Statement of Values.

SHU does not contest the remaining element of a breach of contract claim: damages. Indeed, Boyne's complaint plainly alleges the harm it suffered based on its claim's denial; specifically, Boyne did not receive reimbursement or coverage of "total cost of repairs to be approximately $10 million" and "substantial sums on temporary repairs to resume operations, consistent with the Policy's provision of coverage for temporary repairs." *Compl.* ¶¶ 18-19.

For these reasons, the Court concludes that, taking Boyne's allegations as true and making reasonable inferences in its favor, the complaint alleges a plausible

breach of contract claim against SHU by presenting evidence that a contract existed between Boyne and SHU, that SHU breached a material contract term by denying Boyne's claim, and that the denial caused Boyne's injury. Therefore, the Court declines to dismiss the breach of contract claim.

### B.    Count II – Maine Unfair Claims Settlement Practices Act

SHU first argues that Boyne's claim is misplaced because SHU is not an insurer within the definition of the MUCSPA, nor has it acted as an insurer in Maine. *SHU's Mot.* at 8-10. Boyne responds that SHU applies the wrong statutory definition of "insurer," and that SHU's central role in the issuance of the Policy and adjudication of Boyne's claim satisfy the definition of "insurer" in the present case. *Pl.'s Opp'n* at 11-12. SHU answers that, even under the definition proposed by Boyne, it did not conduct itself as an insurer in this case and thus Boyne's statutory claim must be dismissed. *SHU's Reply* at 4-5.

As an initial matter, the Court agrees with Boyne that the applicable definition of "insurer" for the purposes of a claim brought pursuant to 24-A M.R.S. § 2436-A comes from 24-A M.R.S. § 4. SHU's proposed definition comes from 24-A M.R.S. § 2439, which facially states that its scope is limited to terms "[a]s used in sections 2438 to 2445." *Pl.'s Opp'n* at 12; 24-A M.R.S. § 2439. As the MUCSPA is provided in section 2436 of the Maine Insurance Code, the general definition of "insurer" from 24-A M.R.S. § 4 applies to Boyne's claim. *See* 24-A M.R.S. § 4 ("'Insurer' includes every person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance").

29

Several aspects of 24-A M.R.S. § 4 evidence the Maine Legislature's intent that this statutory definition be construed broadly. *Accord Tom Brown & Co. v. Francis*, 608 A.2d at 152 n.5. First, the language facially contemplates multiple persons potentially qualifying as an "insurer" in a given transaction through its use of "every person," as opposed to a more limiting article like "a" or "the." 24-A M.R.S. § 4. Second, the enumerated list of "indemnitor, surety, or contractor in the business of entering into contracts of insurance" offers various potential roles that would satisfy the statutory definition. 24-A M.R.S. § 4. Of these, the most general role is "contractor," which Black's Law Dictionary defines as "[a] party to a contract." *Contractor*, BLACK'S LAW DICTIONARY (10th ed. 2014).

As addressed in the previous section, the factual record — taken as true for the purposes of this motion to dismiss — indicates that SHU, through its management of the JKL Group, LLC program, is a party to the Policy. *Compl.* at 9-13, 73. This written record is bolstered by SHU's course of performance, where it responded to Boyne's email disputing Crawford's denial of Boyne's claim not by forwarding the email to Starr, but by providing detailed analysis affirming the denial. *Compl.* at 73-76. The Court accepts, at this stage, that SHU acted as an insurer within the meaning of the MUCSPA, and the Court proceeds to whether its alleged conduct amounts to one of the statutory violations described.

Boyne alleges SHU violated the MUCSPA "by misrepresenting the Policy terms to Boyne, by failing to promptly and timely adjust the claim, and by failing to pay Boyne's claim when liability was reasonably clear." *Compl.* ¶ 41. As such, the

Court understands Boyne to allege violations of 24-A M.R.S. § 2436-A(1)(A), (D), and

(E):

> A. Knowingly misrepresenting to an insured pertinent facts or policy provisions relating to coverage at issue;
>
> . . . .
>
> D. Failing to affirm or deny coverage, reserving any appropriate defenses, within a reasonable time after having completed its investigation related to a claim; or
>
> E. Without just cause, failing to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear.

24-A M.R.S. § 2436-A(1).  The statute clarifies that "[f]or the purposes of this section, an insurer acts without just cause if it refuses to settle claims without a reasonable basis to contest liability, the amount of any damages or the extent of any injuries claimed."  24-A M.R.S. § 2436-A(2).

Beginning with subpart (E), the Court concludes Boyne has pleaded facts supporting its claim that SHU denied its claim without just cause.  The complaint facially presents that SHU affirmed Crawford's denial of Boyne's claim by considering "each ski resort a separate location," despite the relevant Statement of Values listing at least ten Locations within the Sunday River resort.  *Compl.* at 65-66, 73-74. Taking as true that SHU denied Boyne's claim on this basis, SHU failed to "effectuate prompt, fair and equitable settlement" of Boyne's claim without a reasonable basis to contest liability.  Based on this plausible violation of 24-A M.R.S. § 2436-A(1)(E), the Court declines to dismiss the MUCSPA claim.  *See Sepúlveda-Villarini v. Dep't of*

*Educ. of P. R.*, 628 F.3d 25, 30 (1st Cir. 2010) ("A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss").

### C.    Count III - Misrepresentation

Before considering the merits of Boyne's misrepresentation claim, the Court notes a preliminary issue regarding the nature of the claim and applicable pleading standard.    In the original complaint, Boyne alleges "Defendants made such representations intentionally or negligently and for the purpose of inducing Boyne to buy the Policy in reliance on the statements." *Compl.* ¶ 48.  In its motion to dismiss, SHU thus characterized Count III as "a fraudulent misrepresentation claim, with negligent misrepresentation pled in the alternative" and argued for the Court to apply the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *SHU's Mot.* at 10-11.  In its response, however, Boyne clarifies that "Count III alleges a claim for negligent misrepresentation." *Pl.'s Opp'n* at 13.  SHU, accepting Boyne's averment, replies by arguing that the negligent misrepresentation claim should nonetheless be dismissed pursuant to Federal Rule of Civil Procedure 8. *SHU's Reply* at 5.  Following the parties' lead, the Court will take Boyne at its word that Count III alleges a negligent representation claim and determine whether Boyne has adequately stated a claim under the requirements of Rule 8.

Pursuant to Rule 8, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To plead plausible entitlement to relief, a plaintiff must present evidence that it satisfies the necessary elements of a particular claim.  As relevant here, "Maine has adopted section 552 of the Restatement (Second) of Torts as the appropriate standard for

negligent misrepresentation claims." *Bowers v. Allied Inv. Corp.*, 822 F. Supp. 835, 839 (D. Me. 1993) (citing *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 615 (Me. 1992)).  This section of the Restatement provides:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts, § 552 (Am. Law Inst. 1977).  Maine courts applying this section have required four discrete elements: "(1) in a transaction in which the [defendant] had a pecuniary interest (2) [the defendant] supplied false information for the guidance of the [plaintiff] (3) without exercising reasonable care or competence and that (4) the [plaintiff] justifiably relied on that false information in their [contracting decision]." *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996).

Here, SHU asserts Boyne's failure to plead two of the necessary elements: first, that SHU made false statements to Boyne, and second, that Boyne justifiably relied on the alleged misrepresentation.  The Court considers both defenses in turn.

First, SHU describes the alleged misrepresentation as the statement that "all resorts would have flood coverage."  *SHU's Reply* at 5-6 (citing *Pl.'s Opp'n* at 14).  However, SHU submits this statement was allegedly made to Mr. Patrick, not Boyne, and argues that Boyne has failed to adequately plead an agency relationship as would impose liability to Boyne for SHU's statements to Mr. Patrick.  *SHU's Reply* at 6 n.3.  Citing District of Massachusetts caselaw, SHU avers "[a] plaintiff must sufficiently allege the elements of an agency relationship, including control."  *Id.*  It is true that

the complaint does not use the word "control"; however, the alleged circumstances plainly contend that Mr. Patrick acted upon the direction of Boyne. In sequential paragraphs, the complaint states that Boyne asked Mr. Patrick to confirm with SHU that the Policy would provide flood insurance to Boyne's resorts. *Compl.* ¶ 13. In this conversation, Boyne alleges, Mr. Brown told Mr. Patrick that Boyne's resorts would be provided flood insurance despite some parts of certain resorts being within a flood plain. *Compl.* ¶ 14. Boyne selected SHU's proposed insurance program based on this statement, which Mr. Patrick relayed to Boyne. *Compl.* ¶ 15. This sequence of alleged events permits a reasonable inference by the Court that Mr. Patrick acted on behalf of Boyne as its agent.

Further, SHU's present position is undermined by its own prior statements. In the complaint, Boyne alleges Mr. Brown informed Mr. Patrick that all of Boyne's resorts would have flood coverage; he would not have done so unless he understood Mr. Patrick to be a representative of Boyne. *Compl.* ¶ 14. More explicitly, SHU's own email to Boyne refers to "your agent" or "your Safehold agent" no less than nine times, providing further support for Boyne's assertion that not only was Mr. Patrick its agent, but that SHU contemporaneously understood that relationship. *Compl.* at 73-76; *see also Douglas v. Lalumiere*, No. 2:20-cv-00227-JDL, 2021 U.S. Dist. LEXIS 186916, at *17 (D. Me. Sep. 29, 2021) ("An apparent agency 'is created only when a third party subjectively believes, by the conduct or words of the purported principal, that another party is an agent.'") (quoting *Higgins v. Penobscot Cnty. Sheriff's Dep't*, No. CIV 04157BW, 2005 U.S. Dist. LEXIS 17100, at *6-7 (D. Me. Aug. 15, 2005)). For

34

these reasons, the Court concludes Boyne has alleged sufficient facts indicating the existence of an agency relationship between itself and Mr. Patrick, such that the Court declines to dismiss Boyne's misrepresentation claim predicated on statements SHU made to Mr. Patrick.

Next, SHU contends that, even if it made the alleged representation, the Court should dismiss Count III because Boyne cannot claim to have justifiably relied on the statement in light of the express terms of the Policy. *SHU's Reply* at 5-6. First Circuit caselaw, SHU says, clearly holds a party responsible for reading the language of a contract, such that a party cannot claim to have relied on a representation contradicted by its written terms. *Id.* (citing *Loguidice v. Metro. Life Ins. Co.*, 336 F.3d 1, 7 (1st Cir. 2003); *Bourgeois v. Blue Cross Blue Shield of Mass.*, 531 F. Supp. 3d 407, 416 (D. Mass. 2021)). According to SHU, the plain language of the Policy excludes Locations "wholly or partially within Special Flood Hazard Areas (SFHA), areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA)." *Id.* at 7 (citing *Compl.* at 9).

However, based on what is before the Court, SHU contention that Boyne failed to read the Policy is not supported by the record. A fair reading of the complaint compels the conclusion that Boyne reviewed the Policy and recognized the exclusion for Locations within the FEMA-designated floodplain; in fact, it was this precise concern that prompted Boyne to ask Mr. Patrick to confirm the scope of flood coverage with Mr. Brown. *Compl.* ¶ 13. Furthermore, Boyne explains at length its position that Mr. Brown's oral representation did not contradict the written terms of the

Policy based on the definition of Location within the Policy itself, which defines Locations according to the Statement of Values, not necessarily as each resort. *Compl.* ¶¶ 26-31. These allegations, specifically incorporated into the misrepresentation count, *Compl.* ¶ 43, distinguish this case from those cited by SHU where a party was not "justified in relying on the second party's representation as a true statement." *SHU's Reply* at 6 (citing *Frontier Communs. Corp. v. Barrett Paving Materials, Inc.*, No. 07-cv-113-B-GZS, 2010 U.S. Dist. LEXIS 87990, at *47 (D. Me. June 25, 2010)).

In the present case, Boyne has presented sufficient facts that, based on the language of the Policy and the attached Statement of Values, its reading of the contract to contemplate multiple Locations within a single resort was reasonable. Boyne alleges it diligently sought to confirm this reading prior to entering into the Policy, that Mr. Brown specifically confirmed that all resorts would have flood coverage "even though small parts of some of the resorts were in a flood plain," and that Boyne selected SHU's Policy in reliance on this statement. *Compl.* ¶¶ 13-15. Taking these facts as true for the purpose of the present motion, the Court concludes that the alleged representation does not contradict the written terms of the Policy and that Boyne's reliance on Mr. Brown's statement was justified.

Consequently, the Court dismisses without prejudice SHU's motion to dismiss Count III for failure to state a claim. The Court also dismisses SHU's alternative motion for a more definite statement as to Boyne's misrepresentation claim, concluding, for the same reasons discussed above, that the complaint has alleged

SHU's conduct giving rise to its claim with sufficient particularity to put SHU on notice and enable it to meaningfully defend itself against the misrepresentation claim.

## VI.    CONCLUSION

The Court DISMISSES without prejudice Southern Hospitality Underwriters' Motion, to Dismiss or in the Alternative for a More Definite Statement (ECF No. 20).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 31st day of January, 2025